IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BUDDY P. KAMAKEEAINA, BOP #13385-022, HI #A0235486, | ) ) ) | CIV. NO. 11-00770 SOM-RLP |
| Plaintiff, | ) ) ) | ORDER DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915 |
| vs. | ) ) | |
| CITY AND COUNTY OF HONOLULU; TYLER MAALO, NATHAN PATOPOFF, WILLIAM DAUBNER, OSCAR WILLIS, RANDALL RIVERA, | ) ) ) ) ) ) | |
| & | ) ) | |
| STATE OF HAWAII; JODIE MAESAKA-HIRATA, WESLEY MUN, TOM LELAND, PETER YAMAMOTO, TULIA PULA, MALCOLM LEE, LINDA RIVERA, JANE OR JOHN DOE, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915

Before the court is *pro se* Plaintiff Buddy P. Kamakeeaina's ("Plaintiff") prisoner civil rights complaint.[1] Plaintiff is a State of Hawaii prisoner incarcerated pursuant to a contract the State has with the federal government, at the Federal Detention Center, Honolulu ("FDC-Honolulu"). Plaintiff names as Defendants the City and County of Honolulu ("C&C") and Honolulu Police Department ("HPD") Officers Tyler Maalo, Nathan Patopoff, William Daubner, Oscar Willis, and Randall Rivera ("HPD

---

[1] Plaintiff is proceeding *in forma pauperis*. *See* ECF #[9].

Defendants"). Plaintiff also sues the State of Hawaii and numerous Department of Public Safety ("DPS") officials, specifically, DPS Director Jodie Maesaka-Hirata; DPS Health Care Administrator Wesley Mun; DPS medical providers--Tom Leland, M.D., Peter Yamamoto, M.D., Tulia Pula, and Malcolm Lee; and DPS grievance officers Linda Rivera and John/Jane Doe (collectively "DPS Defendants"). Plaintiff alleges that the HPD Defendants violated his civil rights during his arrest and while he was in HPD custody, and that DPS Defendants did so during his incarceration at the Oahu Community Correctional Center ("OCCC").

The Complaint is DISMISSED, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915(A)(b)(1), for failure to state a claim. Plaintiff is granted leave to amend the Complaint, if possible, to cure the deficiencies detailed below.

## I. **PLAINTIFF'S CLAIMS**

Plaintiff's Complaint is a disjointed, rambling, 88-page typewritten document, with 216 pages of exhibits. *See* ECF #1, Compl., Exs. 1-23. The Complaint can be roughly divided into two causes of action. Plaintiff first complains of incidents that allegedly occurred between around April 30, 2010, and May 3, 2010, during his arrest and while he was in HPD custody. *Id.* at 5-8. The remainder of Plaintiff's claims allege incidents that occurred after Plaintiff was transferred from HPD to DPS custody on May 3, 2010, and was detained at OCCC until April 19, 2011.

2

*Id.* at 8.  Plaintiff does not assert claims arising after he was transferred to FDC-Honolulu, on or about April 20, 2011, except claims relating to DPS Defendants' handling of grievances he submitted thereafter regarding his treatment while at OCCC.  *Id.* at 60.

Plaintiff's claims do not follow a coherent timeline and are replete with seemingly irrelevant facts.  Plaintiff says he was arrested on April 30, 2010, and charged with two counts of assault and one count of abuse of a family or household member.[2] ECF #1, Compl. at 7.  Plaintiff claims that, although he exhibited signs of mental instability and was extremely intoxicated during the events leading up to his arrest and thereafter, the HPD officers who arrested and detained him did not refer him for a mental health examination, allegedly violating section 334-59(a)(1) of Hawaii Revised Statutes.[3] Plaintiff also alleges that this violated his constitutional rights.  *Id.* at 7-8.

---

[2] As of March 19, 2012, Hawaii's publicly available criminal case database does not reflect these charges as pending or adjudicated.  *See* http://hoohiki1.courts.state.hi.us/jud/Hoohiki. It does show that Plaintiff's probation in state Cr. No. 1PC08-1-001539, for operating a vehicle under the influence of an intoxicant and driving without a license, was revoked on August 11, 2010.  *See id.*

[3] Plaintiff vaguely refers to all of the HPD officers that he names.  He does not specify which officers arrested him, which officers retained custody of him at HPD headquarters, or which officers were responsible for providing him with the mental health assessment or care that he says he did not receive.

Plaintiff complains that, after he was transferred to DPS custody, DPS Defendants Tom Leland, M.D., Peter Yamamoto, M.D., Tulia Pula, and Malcolm Lee failed to accurately document, diagnose, and treat his mental health issues.  Plaintiff alleges that DPS Defendants Linda Rivera, Wesley Mun, and John/Jane Doe improperly processed his grievances.  Plaintiff alleges that these DPS Defendants' actions violated various state laws and prison regulations, as well as the Hawaii and United States constitutions.

Finally, Plaintiff broadly alleges that the HPD, C&C, State of Hawaii, and DPS officials Maesaka-Hirata and Mun failed to adequately train or supervise their employees.  Plaintiff asserts that all Defendants' conduct violated the Eighth and Fourteenth Amendments of the United States Constitution; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; the Rehabilitation Act of 1973 ("RA"), 29 U.S.C.A. § 701 *et seq.*; various provisions of the Hawaii state constitution; state laws; and prison policies and procedures. Plaintiff does not identify what relief he seeks.

## II. <u>STATUTORY SCREENING</u>

The court must screen all civil actions brought by prisoners that relate to prison conditions and/or seek redress from a governmental entity, officer, or employee.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion

4

thereof if its claims are legally frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1).

A complaint may be dismissed for failure to state a claim when it (1) lacks a cognizable legal theory; or (2) sets forth insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, ----, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The court must construe a *pro se* complaint liberally, accept all allegations of material fact as true, and construe those facts in the light most favorable to the plaintiff. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).  Leave to amend should be granted if it appears at all possible that the

plaintiff can correct the defects of his or her complaint.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## III.  **DISCUSSION**

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'"  *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

### A.  **Rule 8 of the Federal Rules Of Civil Procedure**

Rule 8 of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly.  *Jones v. Cmty. Redev. Agency of City of L.A.*, 733 F.2d 646, 649 (9th Cir. 1984).  "All that is required [by Fed. R. Civ. P. 8(a)] is that the complaint gives 'the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'"  *Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996) (quoting *Datagate, Inc. v. Hewlett-Packard Co.*, 941 F.2d 864, 870 (9th Cir. 1991)).

In addition, a complaint in which the facts relating to the claim are scattered throughout the complaint and not organized into a "short and plain statement of the claim" may be dismissed for failure to satisfy Rule 8(a).  *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988); *see also McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).

Plaintiff's 88-page Complaint, with its more than 200-pages of exhibits, fails to comply with Rule 8.  The Complaint's long list of alleged wrongs and overwhelming volume of background details give the court Plaintiff's factual premises.  Plaintiff's claims, however, are rambling, difficult to decipher, repetitive, and fail to plainly and succinctly show that Defendants violated his constitutional or federal statutory rights, and that he is entitled to relief.

For example, Plaintiff fails to state clearly what federal constitutional *wrongs* each Defendant is alleged to have committed and the manner in which they wronged him.  Plaintiff simply claims that Defendants' conduct violated prison regulations and state laws, then concludes that this conduct violated his constitutional rights.  Plaintiff fails to specify how Defendants displayed deliberate indifference to his mental health so as to violate his federal constitutional rights, or how they flouted the ADA and the Rehabilitation Act.  Plaintiff also fails to allege what harm he suffered from the alleged delay or

denial of mental health care.  Plaintiff's Complaint simply fails to sufficiently assert the basis for this court's jurisdiction over his claims.

Further, Plaintiff repeats his claims against each Defendant, providing the same details and conclusions in numerous counts throughout his lengthy Complaint.  Particularly confusing are Plaintiff's detailed accounts of his mental health history and treatment years before his 2010 arrest and incarceration, and information regarding treatment he has received since he left DPS custody.  While these details may be important later, as evidence at trial or in response to dispositive motions, they do not provide clarity to his claims.  Rather, Plaintiff's narrative obfuscates his claims.

In short, although Plaintiff's Complaint is replete with factual detail, those facts are confusing and insufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007).  The Complaint does not allow a determination as to who allegedly did what to Plaintiff, what his specific claims against each individual Defendant entail, what harm he suffered, and how his constitutional and federal statutory rights were violated.  The court cannot conclude that Plaintiff's Complaint asserts a viable claim against any particular Defendant, and will not fashion a statement of what Plaintiff may or may not be alleging.

Plaintiff's Complaint is DISMISSED for failure to state a claim under Rule 8.  This dismissal is without prejudice and with leave granted to amend so that Plaintiff may decide whether and how to amend his claims in light of the court's discussion below.

## B.   Constitutional Violation Allegations

### 1.   *Claims Precluded by the Eleventh Amendment*

To the extent Plaintiff is bringing claims under 42 U.S.C. § 1983 for alleged violations of his rights under the United States Constitution, those claims may not proceed against certain Defendants.

In *Will v. Michigan Department of State Police*, 491 U.S. 58, 64-66 (1989), the Supreme Court held that states, state agencies, and state officials sued in their official capacities are not persons subject to civil rights suits under 42 U.S.C. § 1983.  Further, the Eleventh Amendment prohibits federal jurisdiction over suits against the state or a state agency unless the state or agency has consented to the suit.  *See Seminole Tribe of Fla v. Florida*, 517 U.S. 44, 53 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Quern v. Jordan*, 440 U.S. 332, 342 (1979).  State officers acting in their official capacities receive the same immunity as the government agency that employs them.  *Hafer v. Melo*, 502 U.S. 21 (1991).

9

The Eleventh Amendment therefore bars Plaintiff's constitutional claims against the State of Hawaii, as well as his damages claims against DPS Defendants Maesaka-Hirata, Mun, Leland, Yamamoto, Pula, Lee, and Linda Rivera in their official capacities. *See Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *Eaglesmith v. Ward*, 73 F.3d 857, 859 (9th Cir. 1996); *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992). Claims against the State of Hawaii and damage claims against Maesaka-Hirata, Mun, Leland, Yamamoto, Pula, Lee, and Linda Rivera in their official capacities, to the extent asserted for alleged violations of the United States Constitution, are DISMISSED with prejudice. That is, Plaintiff may not reassert such claims in any amended Complaint he may submit in this action.

## 2.    *Claims Against the City and County of Honolulu*

Plaintiff's official capacity claims against the HPD Defendants must be construed as claims against the C&C, which is not entitled to Eleventh Amendment immunity. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Nonetheless, Plaintiff may not sue the C&C on a theory of *respondeat superior*, which is not cognizable under § 1983. *Iqbal*, 129 S. Ct. at 1948; *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1185 (9th Cir. 2002). A municipal entity may be held liable only if the alleged wrongdoing was committed

10

pursuant to a municipal policy, custom or usage.  *See Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 402-04 (1997); *Monell v. N.Y. City Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978).  Plaintiff must allege facts, not conclusions, to support his official capacity claims.  *See Iqbal*, 129 S. Ct. at 1949.

The Complaint contains no allegations supporting Plaintiff's official capacity claims against the C&C.  That is, Plaintiff does not set forth any municipal policy, custom, or common usage that shows that the C&C violated his rights.  Rather, Plaintiff alleges that the HPD Defendants *violated* state law, municipal policies, and customs when they failed to have him psychologically evaluated after they arrested and detained him, not that they were following any policy denying him mental health care or evaluation.  Plaintiff therefore fails to state a claim against the C&C.

### 3.  *Supervisor Defendants: Maesaka-Hirata and Mun*

As noted above, supervisory officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Iqbal*, 129 S. Ct. at 1948.  The term supervisory liability is therefore a "misnomer" because "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."

*Id.* at 1949.  Supervisory officials "cannot be held liable unless they themselves" violated a constitutional right.  *Id.* at 1952.

Supervisors "can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others."  *Edgerly v. City & Cnty of S.F.*, 599 F.3d 946, 961-62 (9th Cir. 2010) (citing *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000)).

In other words, a supervisor is liable under § 1983 only on a showing of personal involvement in the constitutional deprivation or a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (*en banc*) (citation omitted).  That is, a plaintiff must allege that the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  A supervisor may also be liable for implementing "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  *Redman*, 942 F.2d at 1446; *see Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001).  However, an

individual's "general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987).

Plaintiff does not identify any policy or procedure that DPS Director Maesaka-Hirata or DPS Supervisor Mun promulgated that had a direct causal link to the alleged civil rights violations he alleges.  Plaintiff does not show how Maesaka-Hirata or Mun was involved in the alleged failure to psychologically evaluate and treat him after he was in DPS custody.  Plaintiff does not even allege that they were aware of the treatment, or lack of treatment.  Additionally, Plaintiff fails to allege sufficient facts to support a "failure to train" theory.  Thus, Plaintiff's allegations are insufficient to state a federal civil rights claim on which relief can be granted as to Maesaka-Hirata or Mun.

Moreover, to the extent any HPD Defendant is a supervisor, a matter unclear from the Complaint, Plaintiff fails to allege facts to support a supervisor liability claim against them.

**4.  *Deliberate Indifference Claims Against Employees of HPD and Against Employees of DPS Sued in their Individual Capacities***

Plaintiff broadly claims that Defendants were deliberately indifferent to his health and safety when they

13

allegedly delayed or denied him mental health evaluations or care during his arrest and incarceration (at HPD and OCCC).  It appears that Plaintiff was a pretrial detainee while he was in HPD custody and possibly during part of the time that he was at OCCC.[4]

The Eighth Amendment's prohibition against cruel and unusual punishment applies to pretrial detainees under the Due Process Clause of the Fourteenth Amendment, and a pretrial detainee's claims are evaluated under the Eighth Amendment.  *See Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010); *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010) (applying Eighth Amendment's standards to pretrial detainees); *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418-19 (9th Cir. 2003).

The Eighth Amendment requires that prisoners receive adequate medical care, including mental health care.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). To state a cognizable § 1983 claim for failure to provide medical care, a prisoner must allege a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference

---

[4] Plaintiff's probation was revoked in August 2010, so he could not have been a pretrial detainee thereafter.  *See supra* n.2.

to serious medical needs." *Estelle*, 429 U.S. at 106; *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986).

To be liable for "deliberate indifference," a prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Simmons*, 609 F.3d at 1017-18. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

Deliberate indifference requires consideration of two elements: "[1] the seriousness of the prisoner's medical need[;] and [2] the nature of the defendant's response to that need." *McGuckin*, 974 F.2d at 1059; *see also Lolli*, 351 F.3d at 419. That is, a plaintiff must demonstrate "'objectively, sufficiently serious' harm and that the officials had a 'sufficiently culpable state of mind' in denying the proper medical care. Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002)(citing *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995)).

Objectively, "[a] 'serious' medical need exists if the failure to treat a prisoner's condition could result in further

significant injury or the 'unnecessary and wanton infliction of pain'." *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104); *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Subjectively, "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "This second prong . . . is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Id.*

### a. *HPD Defendants*

Plaintiff alleges that HPD officers (C&C employees) failed to recognize his depression and suicidal thoughts during his arrest and thereafter, and therefore failed to transport him to a hospital for psychological evaluation and treatment. In support, Plaintiff says that before police arrived at his residence on April 30, 2010, he attempted to cut himself, and that, after they arrived, he climbed over his balcony to an adjacent balcony and threatened to jump. Plaintiff admits that he was extremely intoxicated. Plaintiff does not say he told the

16

police that he was depressed or suicidal or, in fact, that he had any mental health concerns, other than his observable intoxication.  Plaintiff simply concludes that, because he received mental health treatment in 2004 and was acting impulsively during his arrest, the police should have known he needed mental health care.

These facts do not suffice to allege the requisite deliberate indifference.  *See Estelle*, 429 U.S. at 105-06 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Lopez*, 203 F.3d at 1131; *see also Farley v. Capot*, 2010 WL 2545710, at *1 (9th Cir. June 21, 2010) (failure to diagnose source of inmate's abdominal pain did not rise to the level of deliberate indifference); *Ruvalcaba v. City of L.A.*, 167 F.3d 514, 525 (9th Cir. 1999) (failure to diagnose arrestee's broken ribs constituted at best negligence, not deliberate indifference).  Even accepting that Plaintiff's need for a mental health evaluation or care was a serious medical need, the facts as alleged show little more than inadvertence and a possible violation of section 334-59 of Hawaii Revised Statutes.  Violations of state law, including a state constitution, are not cognizable under § 1983.  *See, e.g.*, *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998) ("state law violations do not, on their own, give rise to liability under § 1983[.]") (citation omitted).  Additionally,

Plaintiff fails to show that he suffered harm from the HPD
Defendants' alleged failure to have him psychologically evaluated
while he was in HPD custody.  He fails, therefore, to state a
claim against those Defendants.  *See Jett*, 439 F.3d at 1096.

### b. DPS Defendants Pula and Lee

The court turns next to the deliberate indifference
claims against DPS employees.  Given their immunity from claims
against them in their official capacities, the court considers
here the claims only to the extent brought against them in their
individual capacities.  To clarify, "[p]ersonal-capacity suits
seek to impose personal liability upon a government official for
actions he takes under color of state law." *Graham*, 473 U.S. at
165-66.  In contrast, official-capacity suits, "generally
represent only another way of pleading an action against an
entity of which an officer is an agent." *Monell*, 436 U.S. at 690
n.55.

Plaintiff alleges that Defendant Pula medically
screened him when he arrived at OCCC.  *See* ECF #1, Compl. at 9.
On the intake form, Pula noted that Plaintiff exhibited no
observable signs of mental health risk.  Plaintiff concludes that
Pula did so "knowingly and intentionally [to] falsify all
behavioral conditions questions." *Id.*  Plaintiff faults Pula for
not checking an "OffenderTrak" database, which Plaintiff states
"was not being fully implemented at the time of plaintiff's

18

intake screening due to pending hardware improvements/upgrades[.]" *Id.* Plaintiff claims that Pula's "intentional failure" to check this database shows Pula's deliberate disregard for his mental health.

These facts do not constitute a constitutional violation. To the extent Plaintiff alleges that Pula was negligent, such negligence is not actionable under § 1983. *See Strong v. Woodford*, 428 F. Supp. 2d 1082, 1085 (9th Cir. 2006) ("[A] negligent act by a person acting under color of state law does not rise to the level of a constitutional violation."). Moreover, some of Plaintiff's conclusory statements contradict themselves. If the OffenderTrak software was not operable, Pula's failure to check the database was immaterial. Further, if Plaintiff failed to tell Pula of his mental health conditions his allegation that his outward signs of distress were such that Pula must have intentionally falsified her report in failing to note his mental health issues cries out for specifics to avoid being a mere conclusion. Finally, Plaintiff alleges no harm from Pula's actions. In short, Plaintiff's allegations fail to state a claim against Pula.

Similarly, Plaintiff alleges that Defendant Lee reviewed Pula's intake form approximately one week later, which Plaintiff claims violates prison regulations requiring Lee to review an inmate's initial intake report within 72 hours of

admission.  Plaintiff alleges that Lee failed to "update plaintiff's medical file in a punctual manner," and failed to timely notify Dr. Leland of Plaintiff's mental health condition, thereby violating prison policies.  ECF #1, Compl. at 12-13. These facts do not themselves constitute deliberate indifference to Plaintiff's health and safety.  Plaintiff fails to state a claim against Defendant Lee.

### c.   DPS Defendants Dr. Leland and Dr. Yamamoto

The court turns next to deliberate indifference claims brought against the prison doctors in their individual capacities.  Plaintiff complains that, although Leland and Yamamoto treated him numerous times during his stay at OCCC, they failed to prescribe Seroquel, a medication that Plaintiff told Leland and Yamamoto he had taken in 2004 but had discontinued after experiencing unpleasant side effects.  Plaintiff admits that Leland and Yamamoto gave him other medication and treatment. Plaintiff further alleges that Leland and Yamamoto delayed treating him, denied his requests for appointments, and "failed to implement a treatment plan that would outline the intended treatment goals for plaintiff's serious mental illnesses . . . as clearly mandated [by prison policies and procedures]."  ECF #1, Compl. at 15.  Plaintiff states that he was monitored by other OCCC medical providers and evaluated by three court-ordered mental health care professionals during the time he was allegedly

denied appointments with Leland or Yamamoto.  Plaintiff also complains that OCCC officials, presumably including Leland and Yamamoto, refused to let him see his personal therapist, Ms. Rose Clute, to continue his psychotherapy sessions with her while he was at OCCC.

Rather than exhibiting deliberate indifference, these facts suggest that Leland and Yamamoto acted in Plaintiff's interests, e.g., by prescribing medication other than Seroquel based on Plaintiff's own information.  At most, the allegations indicate Plaintiff's disagreement with the prison doctors' medical care, rather than a denial of care.  *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (a difference of opinion between doctor and prisoner is insufficient to establish deliberate indifference).  "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'"  *Id.* (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).  No such circumstances are alleged.

Nor does Plaintiff provide facts that, if true, indicate that the treatment Leland or Yamamoto provided was deficient or caused him any discernible harm.  Inmates do not have a constitutional right to receive a particular or requested

course of medical treatment, and prison doctors are free to exercise their independent medical judgment. *See Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996).  Certainly, Plaintiff had no right to see his personal therapist, as prisoners have "no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution." *Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986).  As written, Plaintiff's Complaint fails to state a claim for deliberate indifference against Leland or Yamamoto.

### 5.  *Grievance Claims*

Plaintiff broadly alleges that DPS Defendants Linda Rivera, Mun, and John or Jane Doe violated his right to due process in the handling of his grievances. *See generally* ECF #1, Compl. at 41-45, 47-57, 63-69.  These allegations fail to state a claim.  The "right of meaningful access to the courts extends to established prison grievance procedures." *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995).  Thus, Plaintiff has a First Amendment right to file prison grievances. *See Brodheim v. Cry*, 584 F.3d 1262, 1269-70 (9th Cir. 2009).  That right, however, is not a free-standing substantive right and "does not guarantee a response to the petition or the right to compel government officials to act on" the grievance. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

Plaintiff's vague allegations regarding the improper handling or rejection of his grievances do not indicate that Mun, Rivera, or other OCCC officials prevented him from exercising his First Amendment right to file prison grievances, or retaliated against him for doing so.

> Responding (or failing to respond) to a prisoner's grievance in a manner unagreeable to the prisoner is not an adverse action taken against the prisoner for filing the grievance. If it were, every time a prisoner disagreed with a Defendant's legitimate response to a grievance, it could result in a sustainable claim of retaliation. . . . Defendants' responses were a part of the exercise of [Plaintiff's] First Amendment rights.

*McCabe v. McComber*, No. 08-00112 JMS, 2008 WL 4133186 *9 (D. Haw. Sept. 8, 2008).

Plaintiff admits that OCCC officials accepted, processed, and responded to his grievances. That is all the protection he is afforded, and his constitutional rights were not violated by improper handling, untimely handling, or rejection of his grievances. Plaintiff fails to state a claim against Linda Rivera, John or Jane Doe, and Mun regarding the handling of his grievances.

### 6. *Equal Protection*

Plaintiff broadly alleges that Defendants denied him equal protection of the law. He does not specify which Defendants did so, or how they discriminated against him. An equal protection claim may be established in two ways. First, a

plaintiff may show that the defendant intentionally discriminated against him or her on the basis of the plaintiff's membership in a protected class, such as race. *See, e.g., Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005); *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001). Plaintiff does not allege that he is a member of a suspect class, nor do his claims support such an interpretation. Thus, he fails to state a claim under this theory.

Second, a plaintiff may establish an equal protection violation by showing that he was treated differently from similarly situated individuals, and that the different treatment was not rationally related to a legitimate state purpose. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *San Antonio Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1972); *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004); *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). Under this theory, a plaintiff must allege that: (1) he is a member of an identifiable class; (2) he was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Vill. of Willowbrook*, 528 U.S. at 564. If an equal protection claim is based on a defendant's selective enforcement (or non-enforcement) of a valid law or rule, a plaintiff must show that the selective enforcement was based upon an "impermissible motive." *Squaw*

24

*Valley*, 375 F.3d at 944; *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).  Plaintiff does not assert that other similarly situated individuals were treated differently from him. Plaintiff fails to state an equal protection claim.

**C.    Claims under the ADA and the Rehabilitation Act**

Plaintiff broadly alleges claims against the State of Hawaii and all Defendants under the ADA and the Rehabilitation Act.  Congress has abrogated the states' Eleventh Amendment immunity with respect to claims under Title II of the ADA and under the Rehabilitation Act.  *See Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791, 792 (9th Cir. 2004); *Hanson v. Med. Bd. of Cal.*, 279 F.3d 1167, 1170 (9th Cir. 2002) (holding that Congress abrogated state sovereign immunity for claims under Title II of the ADA); *Pugliese v. Dillenberg*, 346 F.3d 937, 938 (9th Cir. 2003) (*per curiam*) (holding that a state waives its sovereign immunity under the Eleventh Amendment when it accepts federal Rehabilitation Act funds); *Larson v. Ching*, No. 08-00537 SOM, 2009 WL 1025872 *5 (D. Haw. 2009).  The State and its employees in their official capacities do not, therefore, have immunity from suit under the ADA or the Rehabilitation Act, as they do for claims based on alleged constitutional violations brought under § 1983.

Relevant case law suggests that Plaintiff cannot bring Title II claims against Defendants in their individual

capacities.  Although the Ninth Circuit has declined to reach this issue, *see Eason v. Clark Cnty. Sch. Dist.*, 303 F.3d 1137, 1145 (9th Cir. 2002),[5] the Seventh Circuit, Eighth Circuit, and some district courts in the Ninth Circuit have determined that public actors cannot be sued in their individual capacities directly under Title II of the ADA.  *See, e.g.*, *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000), *overruled on other grounds by Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc); *Hunter v. Clark*, 2010 WL 2196684, at *2 (E.D. Cal. May 28, 2010); *Gonzales v. Dexter*, 2008 WL 4275783, *6 (C.D. Cal. Sept. 4, 2008).  In *Thomas v. Nakatani*, 128 F. Supp. 2d 684, 692 (D. Haw. 2000), another judge in this district reached the same conclusion, based in part on the Eighth and Seventh Circuit's decisions in *Walker* and *Alsbrook*.

This court, however, need not make a determination as to that issue here.  Even assuming that Plaintiff may sue Defendants in their individual capacities, Plaintiff states no

---

[5] There are some unpublished Ninth Circuit decisions that address the issue but, as those were issued before Ninth Circuit rules permitted citation to unpublished Ninth Circuit rulings, the court does not rely on them here.  To the extent Plaintiff asserts § 1983 claims against Defendants in their individual capacities to vindicate his rights under the ADA & RA, those claims are barred.  *See, e.g.*, *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

claim against them under the ADA or Rehabilitation Act, whether
in their individual or official capacities.

　　　　To state a claim under Title II of the ADA, Plaintiff
must allege that (1) he is an individual with a disability; (2)
he is otherwise qualified to participate in or receive the
benefit of the prison's services, programs or activities; (3) he
was excluded from participation in or denied the benefits of the
prison's services, programs or activities, or was otherwise
discriminated against by the prison; and (4) such exclusion,
denial or discrimination *was by reason of his disability*.  42
U.S.C. § 12132 (emphasis added); *see Simmons*, 609 F.3d at 1021;
*McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).

　　　　The elements of a claim under the Rehabilitation Act
are materially identical to those under the ADA, except that a
plaintiff must allege that the program at issue receives federal
financial aid.  *See Armstrong v. Davis*, 275 F.3d 849, 862 n.17
(9th Cir. 2001); *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135
(9th Cir. 2001).

　　　　Plaintiff fails to allege specific facts showing any
Defendant's personal participation in a violation of the ADA or
Rehabilitation Act.  Plaintiff simply alleges that he was denied
timely mental health assessments and appropriate mental health
treatment.  Plaintiff then concludes that Defendants
discriminated against him on the basis of his mental disability.

The ADA, however, prohibits discrimination *because* of disability, not inadequate treatment *for* a disability.  *See Simmons*, 609 F.3d at 1021-22.  The alleged lack of medical assessment or treatment for Plaintiff's depression and other mental health conditions does not provide a basis on which to impose liability under the ADA or the Rehabilitation Act.  *See id.; see also Burger v. Bloomberg*, 418 F.3d 882, 882 (8th Cir. 2005) (medical treatment decisions do not form the basis for ADA claims); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (medical decisions are not ordinarily within scope of ADA); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."); *O'Guinn v. Nev. Dept. of Corr.*, 2010 WL 4395442 *4 (D. Nev. 2010) ("Although plaintiff[] . . . frames [the] deprivation of care as discriminatory, the court remains convinced that plaintiff's claim sounds in medical negligence.  In other words, the case involves differences of opinion regarding proper mental health treatment, not discrimination under the ADA or RA.").

More importantly, Plaintiff's claims of delayed and inadequate treatment for his mental conditions do not suggest that Defendants denied him medical treatment *because* of his mental disability or conditions, as required under the ADA and the Rehabilitation Act.  Nor does it appear that Plaintiff can meet this requirement.  It simply does not follow that Defendants

28

discriminated against Plaintiff because of his mental health conditions by denying him medical care for his mental health conditions.

Plaintiff provides no facts indicating that any Defendant participated in or was otherwise responsible for excluding him, on the basis of his mental health status, from activities, programs, or other benefits that would otherwise have been available to him because of his mental health status. Plaintiff's general references to the ADA and the Rehabilitation Act are insufficient to meet his burden to plead facts satisfying the elements of a claim under either statute. Accordingly, Plaintiff's ADA and Rehabilitation Act claims are DISMISSED with leave to amend.

**D.   Leave to Amend**

The Complaint is DISMISSED.  Plaintiff may file a proposed amended complaint **on or before April 26, 2012.**  The proposed amended complaint must cure the deficiencies noted above and demonstrate how the conditions complained of resulted in a deprivation of federal constitutional or statutory rights.

The court will not refer to the original pleading to make an amended complaint complete.  Local Rule 10.3 requires that an amended complaint be complete in itself without reference to any prior pleading.  Defendants not named and claims not realleged in an amended complaint will be deemed waived.  *See*

29

*King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).  Furthermore, as a general rule, an amended complaint supersedes the original complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  In an amended complaint, each claim and the involvement of each Defendant must be sufficiently alleged.

Plaintiff is NOTIFIED that he must submit his proposed amended complaint on the court's prisoner civil rights complaint form.  *See* Local Rule LR99.7.10(a).  If Plaintiff requires extra pages, he may attach them to the proposed amended complaint.  Plaintiff's proposed amended complaint may not, however, exceed 15 typewritten pages in excess of the court's form.  Plaintiff's exhibits remain on file and need not be resubmitted or attached to the amended complaint.

## E.   28 U.S.C. § 1915(g)

Because the Complaint has been dismissed for failure to state a claim, if Plaintiff fails to file an amended complaint that corrects the deficiencies identified in this Order, this dismissal may count as a "strike" under the three-strikes provision of 28 U.S.C. § 1915(g).  Under the three-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment *in forma pauperis* under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is

frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

## IV. CONCLUSION

IT IS HEREBY ORDERED that:

(1) The Complaint is DISMISSED for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(b) & 1915A(b)(1). Specifically, (a) claims against the State of Hawaii and damages claims against Maesaka-Hirata, Mun, Leland, Yamamoto, Pula, Lee, and Linda Rivera in their official capacities are DISMISSED with prejudice; (b) claims alleged under the ADA and the Rehabilitation Act and all other claims are dismissed without prejudice. Claims dismissed with prejudice may not be reasserted in an amended complaint.

(2) Plaintiff is GRANTED leave to file a proposed amended complaint curing the deficiencies noted above on or before **April 26, 2012**. Failure to timely or properly amend the Complaint will result in the AUTOMATIC DISMISSAL of this action for failure to state a claim, and may be counted as strike pursuant to 28 U.S.C. § 1915(g).

(3) The Clerk of Court is directed to mail a form prisoner civil rights complaint to Plaintiff so that he may comply with the directions in this Order. Plaintiff is NOTIFIED that his

proposed amended complaint may include NO MORE THAN FIFTEEN

additional typewritten pages in excess of the court's form.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 29, 2012.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

*Kamakeeaina v. City and County of Honolulu, et al.,* Civ. No. 11-00770 SOM-RLP, Order
Dismissing Complaint Pursuant to 28 U.S.C. § 1915; psa/Screening/dmp/ 2012/Kamakeeaina
11-770 SOM (ftsc R8 lv amd)