IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BUDDY P. KAMAKEEAINA, BOP #13385-022, DPS #A0235486, | ) ) ) | CIV. NO. 11-00770 SOM-RLP |
| Plaintiff, | ) ) | ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING |
| vs. | ) ) | SERVICE |
| CITY AND COUNTY OF HONOLULU, et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

### ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE

Before the court is *pro se* Plaintiff Buddy P. Kamakeeaina's first amended prisoner civil rights complaint ("FAC").[1]  Plaintiff, now incarcerated at the Federal Detention Center, Honolulu ("FDC"), complains about incidents that allegedly occurred during his arrest and detention by the Honolulu Police Department ("HPD"), and after his transfer to the Oahu Community Correctional Center ("OCCC").

Plaintiff names as Defendants: the City and County of Honolulu ("C&C"); HPD Officers Tyler Maalo, Nathan Patopoff, William Daubner, Oscar Willis, and Randall Rivera (collectively, "HPD Defendants"); and the State of Hawaii, along with Department of Public Safety officials ("DPS") Director Jodie Maesaka-Hirata, Health Care Administrator Wesley Mun, Grievance Officer Linda

---

[1] On March 29, 2012, the court dismissed Plaintiff's original Complaint with leave given to amend, pursuant to 28 U.S.C. §§ 1915(e)and 1915A(b).  ECF #12.

Rivera, Tom Leland, M.D., Peter Yamamoto, M.D., and Health Service Provider Tulia Pula (collectively, "DPS Defendants"). Plaintiff alleges that all Defendants denied him mental health care during his arrest, initial HPD detention, and later incarceration at OCCC, in violation of the Eighth and Fourteenth Amendments, the American With Disabilities Act of 1990 ("ADA"), and the Rehabilitation Act of 1973.

The court has screened the FAC under §§ 1915(e)(2) and 1915A(a) and dismisses it in part as discussed below.  Plaintiff may proceed on his 42 U.S.C. § 1983 claims against the HPD Defendants, Dr. Leland, and Dr. Yamamoto.  Plaintiff's claims against DPS Defendants Maesaka-Hirata, Mun, Linda Rivera, and Pula, and all claims under the ADA and Rehabilitation Act are dismissed with prejudice.

## I. **STATUTORY SCREENING**

The court must screen all civil actions brought by prisoners that relate to prison conditions and/or seek redress from a governmental entity, officer, or employee.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if its claims are legally frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1).

A complaint may be dismissed for failure to state a claim when it (1) lacks a cognizable legal theory; or (2) sets forth insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

The court must construe a *pro se* complaint liberally, accept all allegations of material fact as true, and construe those facts in the light most favorable to the plaintiff. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).  Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defects of his or her complaint.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## II. **PLAINTIFF'S CLAIMS**

Plaintiff claims to have been diagnosed as mentally disabled due to post-traumatic stress disorder ("PTSD"), bipolar I disorder, antisocial personality disorder, and chemical

3

dependency.  *See* FAC, ECF #18 at 9.[2]  Plaintiff broadly asserts claims in two counts, although he alleges several claims within each Count.

**A.   Count I[3]**

In Count I, Plaintiff alleges that HPD and DPS Defendants in their individual capacities violated the Eighth and Fourteenth Amendments when they failed to provide him with mental health care during his arrest and HPD detention, and thereafter while he was in DPS custody during his incarceration at OCCC. *Id.*, ECF #18 9-20 (Count I).  Plaintiff first alleges that, despite having actual knowledge of his mental instability and suicidal ideation through observations during his arrest that they noted in his arrest documents, HPD Defendants failed to refer him for a  mental health evaluation or care while he was in HPD custody from April 30 to May 3, 2010, in violation of Haw. Rev. Stat. § 334-59(a)(1), and with deliberate indifference to his obvious medical needs.  *Id.* at 10.

Plaintiff next asserts that DPS Defendants Pula, Dr. Leland, and Dr. Yamamoto failed to accurately document, diagnose, and treat his mental health issues while he was in custody at OCCC between May 3 2010, and April 19, 2011.  Plaintiff states

---

[2] For clarity, the court refers to the electronic pagination of all documents.

[3] The individual Defendants named in Count I are sued in Count I in their individual capacities only.

that he notified them of his mental health issues and requested mental health care, but that Pula, Dr. Leland, and Dr. Yamamoto denied his requests with deliberate indifference to his serious need for mental health care. *Id.* at 13.

Plaintiff asserts that DPS Director Maesaka-Hirata and Administrator Mun are liable to him because they initiated policies and procedures that were not operable or were not followed by their subordinates.

Plaintiff also asserts that DPS Defendants Mun and Linda Rivera violated his right to due process in their handling of his prison grievances.

Finally, Plaintiff claims that DPS Defendants violated his right to equal protection under the law, generally asserting that other inmates were treated more favorably than he was at OCCC.

## B.   Count II

In Count II, Plaintiff broadly alleges that all Defendants in their official capacities, including the State of Hawaii and the C&C, violated the ADA and Rehabilitation Act by allegedly denying him mental health care. *Id.*, ECF #18 at 21.

## C.   Prayer for Relief

Plaintiff seeks injunctive relief requiring the State of Hawaii and DPS to continue his mental health treatment, including psychotropic medication and therapy sessions, and to

5

formally recognize his mental illnesses at all correctional facilities that Plaintiff may be incarcerated at in the future. Plaintiff also seeks compensatory and punitive damages.

### III.  ANALYSIS

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.  The Eighth and Fourteenth Amendments: Deliberate Indifference

Plaintiff claims that all Defendants violated his rights under the Eighth and Fourteenth Amendments.  Plaintiff was a pretrial detainee when he was arrested on April 30, 2010, in Criminal No. 10-1-000729,[4] and "was reclassified to a convicted prisoner due to [a] probation revocation [in] Criminal No. 1PC08-1-00139" on August 11, 2010.  FAC at 13.

Because he was a pretrial detainee until at least August 11, 2010, Plaintiff's claims during that period are analyzed under the Fourteenth Amendment's due process clause, which protects a pretrial detainee from punishment prior to an adjudication of guilt in accordance with due process of law.

---

[4] Public records reveal that Plaintiff pleaded no contest to two counts of assault in the second degree and one count of abuse of a family or household member in 1PC10-1-00729, on March 17, 2011. *See* http://hoohiki1.courts.state.hi.us/jud/Hoohiki/.

*Bell v. Wolfish*, 441 U.S. 520, 534-35 (1979)); *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017–18 (9th Cir. 2010).  "This standard differs significantly from the standard relevant to convicted prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment."  *Pierce v. Cnty of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008).  A pretrial detainee's due process rights are therefore at least as great as a convicted prisoner's Eighth Amendment rights.  *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003) ("[E]ven though the pretrial detainees' rights arise under the Due Process Clause, the guarantees of the Eighth Amendment provide a minimum standard of care for determining their rights[.]").

A prisoner's rights are violated when a jailer fails to promptly and reasonably provide competent medical aid when the prisoner suffers a serious illness or injury while confined. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  To establish a plausible claim for failure to provide medical treatment, a prisoner must plead facts sufficient to permit the court to infer that (1) he had a serious medical need, and (2) defendants were "deliberately indifferent" to that need.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); cf. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).  This principle extends to an inmate's

needs for mental health care.  *Smith v. Jenkins*, 919 F.2d 90, 92–93 (8th Cir. 1990).  A serious medical need exists when "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  *Jett*, 439 F.3d at 1096 (internal citations and quotations omitted).

A defendant's deliberate indifference to a prisoner's need for medical care "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or *possible* medical need and (b) harm caused by the indifference."  *Jett*, 439 F.3d at 1096.  A prisoner "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Farmer*, 511 U.S. at 842.  This standard "sends a clear message to prison officials that their affirmative duty under the Constitution for the safety of inmates is not to be taken lightly.  *Id.* at 852.

### 1. *HPD Defendants: Denial of Mental Health Care*

Plaintiff alleges that HPD Defendants denied him the necessary mental health care he says they were required to provide under Haw. Rev. Stat. § 334-59(a)(1) and the United States and Hawaii constitutions, when they failed to take him to Queen's Medical Center or an equivalent facility for a

8

psychological evaluation and treatment after his arrest.  *See* FAC, ECF #18 at 10.

Plaintiff claims that Officers Maalo, Patopoff, and Daubner "reported Plaintiff's condition as, but not limited to 'mentally deranged,' 'great anger,' 'violent crime,' 'weapons in area,' etc. to justify use of force." *Id.* at 11-12.  Plaintiff alleges that the other HPD Defendants observed his unstable mental condition when he stood on a fourteenth floor balcony and told them that he was going to jump. *Id.*

These facts sufficiently state a claim that HPD Defendants were deliberately indifferent to a substantial risk of harm to Plaintiff.  At this stage, the court accepts that Plaintiff had a serious need for mental health care.  Plaintiff also sufficiently alleges that HPD Defendants knew or should have been aware of his serious need for mental health care and of the risk of harm that he faced, based on Plaintiff's suicidal threats and obvious disorientation and intoxication.[5]

Plaintiff also adequately alleges a state law violation of Haw. Rev. Stat. § 334-59(a)(1), and asks the court to exercise

---

[5] Liberally construing the FAC and its exhibits, Plaintiff sufficiently alleges mental and emotional harm resulting from HPD Defendants' inaction. "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett,* 439 F.3d at 1096.

supplemental jurisdiction over this claim.  *See* FAC, ECF #18 at 1.

### 2.   *Claims Against Drs. Leland and Yamamoto*

Plaintiff complains that DPS Defendants Dr. Leland and Dr. Yamamoto exhibited deliberate indifference to his serious medical needs when they allegedly denied him mental health treatment while he was imprisoned at OCCC from May 3, 2010, through April 19, 2011.  *See* FAC, ECF #18 at 18-19.

When Plaintiff was admitted to OCCC on May 3, 2010, Defendant Pula completed a preliminary mental health intake screening.  *Id.* at 20.  This intake form was reviewed one week later, on May 10, 2010, and a post-admission mental health assessment was done, in which Plaintiff was referred to a medical doctor.  *See* Pl. Exh. B, ECF #3-2.[6]  Plaintiff's medical chart shows that he was seen at the OCCC Psychiatric Clinic on May 13, 2010.  *See* Pl. Exh. L, ECF #3-12 at 23.

_____

[6] The court told Plaintiff that he need not resubmit his exhibits when he amended the original Complaint and now takes notice of those exhibits as part of Plaintiff's pleadings.  *See Parks Sch. of Bus., Inc. v Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) ("When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper[.]") (citing *Cooper v. Bell*, 628 F.2d 1208, 1210 n. 2 (9th Cir. 1980)); *Sunrize Staging, Inc. v. Ovation Dev. Corp.*, 241 F. App'x 363, 365 (9th Cir. May 18, 2007) (allowing judicial notice of documents "'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'") (quoting *Janas v. McCracken (In re Silicon Graphics Inc. Sec. Litig.)*, 183 F.3d 970, 986 (9th Cir. 1999)).

On May 18, 2010, Plaintiff saw Dr. Leland, who conducted a mental health referral interview.  FAC, ECF #18 at 18.  Plaintiff informed Dr. Leland of his PTSD and bipolar diagnoses and his other mental health issues.  Plaintiff requested Seroquel, an anti-psychotic medication that he had previously taken, psychotherapy, or other treatment.  *Id.*  Dr. Leland denied Plaintiff's request for Seroquel.  Plaintiff states at one point that the denial was based on the absence of Seroquel from OCCC's formulary list, but the record also indicates that the reason he was denied Seroquel was that he had reported having had a negative interaction when he took Seroquel in 2005.  *See id.* at 19; *see also* Pl. Exh. B, ECF #3-2 ("*Pt. doesn't like side-effects of [Seroquel]; haven't taken Rx since '05 when prescribed. Only 1 dose taken").  Dr. Leland asked Plaintiff if he intended to return to his personal psychotherapist upon release, and Plaintiff said that was his intent.  Plaintiff alleges that Dr. Leland did not prescribe any other medication or treatment for his mental health issues and thereafter denied Plaintiff's persistent requests for mental health care.  FAC, ECF #18 at 18.

Plaintiff alleges that on September 10, 2010, four months after he was admitted to OCCC, he first met with Dr. Yamamoto.  FAC, ECF #18 at 18.  Plaintiff claims that Dr. Yamamoto "concluded that Plaintiff's extensive criminal and

11

substance abuse histories were incompatible to Plaintiff's claims of being diagnosed with Post-Traumatic Stress Disorder and [Bipolar I Disorder]." *Id.* at 19.  Plaintiff again requested Seroquel, as well as Trazodone and sleeping pills.  Plaintiff says that Dr. Yamamoto denied him Seroquel because of his earlier negative reaction to it, and also denied him Trazodone and sleeping pills.  Plaintiff claims that he received no further mental health treatment from Dr. Yamamoto while he was in custody at OCCC.  *Id.*

Although Plaintiff's claims for harm resulting from Dr. Leland's and Dr. Yamamoto's alleged inaction are vague in the FAC, in his exhibits to the original Complaint he claimed that his PTSD, bipolar disorder, mood swings, depression and anti-social disorder deteriorated throughout his incarceration at OCCC.[7]  Pl. Exh. V, ECF #3-23.  Plaintiff sufficiently alleges that Dr. Leland and Dr. Yamamoto harmed him by acting with deliberate indifference to his serious mental health needs while he was at OCCC.  Plaintiff may proceed against them.

---

[7] Plaintiff's exhibits also show the extensive mental health treatment Plaintiff received when he was transferred to the FDC, including being prescribed Trazodone and other medications. See Exh. R to Compl., ECF #3-18, 1-27. These documents also note Plaintiff's apparent mental health improvement since he has been at FDC.

### 3.   *Claims Against Pula Are Dismissed*

Plaintiff alleges that DPS Defendant Pula "knowingly and intentionally falsif[ied] all the observable conditions and the mental health-related questions" in performing Plaintiff's initial medical and mental health screening on May 3, 2010, when he arrived at OCCC.  *See* FAC, ECF #18 at 20; *see also* ECF #3-1, 3-5.  Plaintiff claims that he told Pula of his previous mental health diagnoses, including information regarding his past and recent suicide attempts, but she nonetheless checked "No" to all questions under the heading "Has the inmate verbalized or are there observable signs of MH risk?"  *Id*.  Plaintiff says that he was therefore unable to obtain mental health treatment at OCCC.

Plaintiff's claims are not supported by his own statements and exhibits, which clearly show that he was referred for further mental health assessment on May 10, 2010, and then seen by Drs. Leland and Yamamoto at the OCCC Psychiatric Health Clinic thereafter.  Nothing that Pula wrote on the form prevented Plaintiff from receiving mental health care at OCCC.  Moreover, Plaintiff misapprehends the intake form, as it clearly shows that Pula noted that Plaintiff told her that he had PTSD, bipolar disorder, and anti-social behavior, and was depressed.  Pula's negative responses to questions about whether Plaintiff had verbalized risks or she had observed signs of a mental health risk during his intake interview do not equate to a determination

that he did not require mental health treatment.   Nor are Pula's responses equivalent to a failure to document his mental health issues as he related them to her.   The questions in issue related to "risk," not to conditions or diagnoses.

Plaintiff also asserts that Pula's failure to check the Offendertrak Software during his intake interview violated his civil rights.[8]   Plaintiff says that DPS policies and procedures require that "Intake Service Center staff shall check Offendertrak to verify/validate any past mental health history." FAC, ECF #18 at 14.

Pula could not check the Offendertrak database because it was inoperable, but inoperability does not render Pula's failure a constitutional violation (or even a deliberate violation of DPS policies).   "An allegation that a defendant violated a prison policy is not sufficient to state a constitutional claim."   *See Exmundo v. Drew*, No. 07-01711-LJO, 2011 WL 2946175 (E.D. Cal. July 21, 2011) (citing *Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir. 1997) (holding that there is no § 1983 liability for violation of prison policy)).   Plaintiff alleges repeatedly that he told Pula and the other DPS Defendants about his relevant criminal and mental health histories.   This is

---

[8] Offendertrak is a software database program "designed to record, maintain and monitor inmate mental health and history to help make mental health management decisions."   *See* FAC, ECF No. 18 at 15.

14

reflected in the intake form and his other exhibits.  He does not explain how Offendertrak would have provided more data than he himself provided.  Because Plaintiff fails to state a claim against Pula, those claims are DISMISSED with prejudice.

**B.   Claims Against DPS Defendants Maesaka-Hirata and Mun Are Dismissed With Prejudice**

Plaintiff claims that DPS Director Maesaka-Hirata and DPS Health Care Administrator Mun violated DPS policies and procedures and his constitutional rights because the Offendertrak software was not working when he was admitted to OCCC, something that Plaintiff says they knew or should have known.  *See* FAC, ECF #18 at 14-15.  Like his allegations relating to Pula, these allegations against Maesaka-Hirata and Mun fail to state a claim.

Moreover, to the extent Plaintiff may be vaguely claiming that Maesaka-Hirata and Mun are liable for Dr. Leland's or Dr. Yamamoto's actions on a theory of supervisor liability, he also fails to state a claim.  Supervisors may not be held liable under § 1983 for the unconstitutional actions of their subordinates based solely on a theory of *respondeat superior*.  *See Iqbal*, 556 U.S. at 676; *Moss v. U.S. Secret Serv.*, 675 F.3d 1213, 1230 (9th Cir. 2012).  Instead, a claimant must make a showing relating to that supervisor's own action or inaction.  "A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement — and the

15

liability — of that supervisor." *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012).

Supervisors may be held liable under § 1983 as follows: "(1) for setting in motion a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a 'reckless or callous indifference to the rights of others.'" *Moss*, 675 F.3d at 1231 (quoting *al-Kidd v. Ashcroft*, 580 F.3d 949, 965 (9th Cir. 2009), *overruled on other grounds by Ashcroft v. al-Kidd*, --- U.S. ----, 131 S. Ct. 2074 (2011)) (citation omitted).

Plaintiff fails to allege any facts supporting a claim based on action or inaction by Maesaka-Hirata or Mun in supervising Dr. Leland or Dr. Yamamoto or establishing that the *Moss* factors apply to Maesaka-Hirata or Mun. To the contrary, Plaintiff sets forth copies of DPS policies and procedures for evaluating and treating inmates' mental health issues, policies that Maesaka-Hirata and Mun are presumed to have approved and be responsible for. Plaintiff complains throughout the original Complaint and FAC that Dr. Leland and Dr. Yamamoto *violated* those policies and procedures.

16

Plaintiff does not show how Maesaka-Hirata and Mun were involved with or acquiesced in the alleged failure to treat him while he was in DPS custody.  He does not even allege that Maesaka-Hirata was aware of the alleged lack of treatment, and only alleges that Mun knew in December 2011 when Plaintiff incorrectly submitted a grievance to Mun.  Nothing within the FAC demonstrates that Maesaka-Hirata or Mun exhibited callous indifference to Plaintiff's alleged need for mental health treatment.  Plaintiff fails to state claims against Maesaka-Hirata and Mun, and his claims against them are DISMISSED with prejudice.

## C.   Grievance Claims Against Mun and Linda Rivera Are Dismissed With Prejudice

On December 13, 2010, Plaintiff submitted a grievance claim to Mun's office regarding the alleged denial of mental health care.  *See* FAC, ECF #18 at 16.  Plaintiff explained his mental health and criminal history and demanded "mental health treatment be implemented by way of psychotherapy and/or psychotropic prescribed medication." *Id.*  Mun did not himself respond to the grievance but apparently forwarded it to Grievance Specialist Linda Rivera.  Thereafter, Rivera rejected the grievance as untimely, presumably because it had not been submitted within fourteen days of the dates Plaintiff alleges he was initially denied mental health care by Pula (May 3, 2010),

Dr. Leland (May 18, 2010), and Dr. Yamamoto (September 10, 2010).
Plaintiff claims that Mun violated his right to due process when
Mun failed to respond to the grievance, and that Rivera did so
when she rejected his grievance as untimely. *Id.* at 20.

"Responding or failing to respond to a prisoner's
grievance in a manner unagreeable to the prisoner is not an
adverse action taken against the prisoner for filing the
grievance." *McCabe v. McComber*, No. 08-00112 JMS, 2008 WL
4133186 *9 (D. Haw. Sept. 8, 2008).  Mun's transfer of
Plaintiff's grievance to Rivera did not violate due process, and
Plaintiff fails to state a claim against Mun on this basis.

Rivera's participation in Plaintiff's grievance
process, whether a refusal to "process" it or a denial for
untimeliness, is an insufficient basis for a claim. *See, e.g.,*
*Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding
that a prisoner has no constitutional right to an effective
grievance or appeal procedure); *Mann v. Adams*, 855 F.2d 639, 640
(9th Cir. 1988); accord *Buckley v. Barlow*, 997 F.2d 494, 495 (8th
Cir. 1993) ("[A prison] grievance procedure is a procedural right
only, it does not confer any substantive right upon the
inmates."). A prisoner's right to petition the government is a
right of expression and "does not guarantee a response to the
petition or the right to compel government officials to act on"
the petition. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

18

Plaintiff's own allegations establish that his grievance was received, forwarded, processed, and responded to. Plaintiff therefore fails to state a due process claim against Linda Rivera or Mun regarding his grievances, and these claims are DISMISSED with prejudice.

**D.    Equal Protection Claims**

Plaintiff claims that DPS Defendants violated his right to equal protection under the law.  An equal protection claim may be established in two ways.  First, a plaintiff may show that the defendant intentionally discriminated against the plaintiff on the basis of the plaintiff's membership in a protected class, such as race.  *See e.g.*, *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005); *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001).  Plaintiff claims that he is a member of the protected class of persons with mental illnesses.  *See* FAC, ECF #18 at 17.  Even if individuals with mental illnesses are a protected class (a matter this court need not presently address), Plaintiff does not actually allege that DPS Defendants discriminated against him based on his alleged membership in a protected class.  He therefore fails to state an equal protection claim based on this theory.

Second, a plaintiff may establish an equal protection violation by showing that he was treated differently from similarly situated individuals, and that the different treatment

19

was not rationally related to a legitimate state purpose.  *Vill.
of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *San Antonio
Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1972); *Squaw Valley Dev. Co.
v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004); *SeaRiver Mar.
Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002).
To state an equal protection claim, Plaintiff must allege that:
"(1) he is a member of an identifiable class; (2) he was
intentionally treated differently from others similarly situated;
and (3) there is no rational basis for the difference in
treatment."  *See Olech*, 528 U.S. at 564.  Plaintiff alleges that
he is a member of the identifiable class of inmates with mental
illnesses, and that "OCCC mental health staff intentionally
treated Plaintiff differently due to prejudice and/or
discrimination for which the difference in treatment was not
rationally based."  *See* FAC, ECF #18 at 9, 17.

While Plaintiff alleges the barest elements of an equal
protection claim, his allegations do not include facts that, if
true, sustain the claim.  Plaintiff says that his cellmate was
prescribed Resperidone and Trazidone, while he was not.
Plaintiff also claims that Dr. Yamamoto discriminated against him
"by concluding that Plaintiff's claims of being diagnosed with
PTSD and [bipolar disorder] were incompatible to Plaintiff's
claims of an extensive criminal history and substance abuse
history."  FAC, ECF #18 at 19.

Plaintiff, however, does not allege that his cellmate and he were similarly situated. His cellmate's receipt of certain treatment and medication is no indication that Plaintiff and the cellmate had the same mental health conditions, or the same degree of impairment from the same conditions, or that they required the same treatment. Nor does Dr. Yamamoto's alleged statement suggest discrimination against Plaintiff. Rather, it suggests that Dr. Yamamoto questioned Plaintiff's diagnoses and claims and need for drugs. Conclusory statements and the recitation of the elements of a cause of action do not meet Rule 8(a)'s pleading requirement. *See Iqbal*, 556 U.S. at 664. Because Plaintiff was given leave to amend this claim before, and because even the excruciating detail in his original Complaint and FAC are insufficient to state an equal protection claim, it appears that amendment is futile. Plaintiff's equal protection claims are DISMISSED with prejudice.

**E.   ADA and Rehabilitation Act Claims**

Plaintiff asserts claims under Title II of the ADA and the Rehabilitation Act against all Defendants in their official capacities, apparently including the State of Hawaii and the C&C. To state a claim under Title II of the ADA, Plaintiff must allege that (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of the prison's services, programs or activities; (3) he was

21

excluded from participation in or denied the benefits of the prison's services, programs or activities, or was otherwise discriminated against by the prison; and (4) such exclusion, denial or discrimination *was by reason of his disability*.  42 U.S.C. § 12132 (emphasis added).  The elements of a claim under the Rehabilitation Act are materially identical to those under the ADA, except that a plaintiff must allege that the program at issue receives federal financial aid.  *See Armstrong v. Davis*, 275 F.3d 849, 862 n.17 (9th Cir. 2001).

Plaintiff alleges that he is a qualified individual within the meaning of the ADA, and that, as a result of Defendants' alleged violations of his civil rights, "Plaintiff was excluded from the participation in and denied the benefits of mental health services that Plaintiff was otherwise qualified to receive throughout Plaintiff's detainment, conviction and/or imprisonment at both the HPD Main station . . . and OCCC."  FAC, ECF #18 at 21.  That is, Plaintiff concludes that Defendants excluded him from participation in and benefits of mental health services based on his mental disability.  This argument makes no sense.

The ADA prohibits discrimination *because* of disability, not inadequate treatment *for* a disability.  *See Simmons v. Navajo Cnty, Ariz.*, 609 F.3d 1011, 1021–22 (9th Cir. 2010).  Therefore, the alleged lack of treatment for Plaintiff's mental health

22

conditions does not provide a basis on which to impose liability under the ADA or the Rehabilitation Act. *See id.; see also Burger v. Bloomberg*, 418 F.3d 882, 882 (8th Cir. 2005) (medical treatment decisions do not form the basis for ADA claims); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (medical decisions are not ordinarily within scope of ADA); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."); *O'Guinn v. Nev. Dept. of Corr.*, 2010 WL 4395442 *4 (D. Nev. 2010) ("Although plaintiff[] . . . frames [the] deprivation of care as discriminatory, the court remains convinced that plaintiff's claim sounds in medical negligence.  In other words, the case involves differences of opinion regarding proper mental health treatment, not discrimination under the ADA or RA.").

Plaintiff's claims of delayed or inadequate treatment for his mental health conditions do not suggest that Defendants denied him medical treatment *because* of his mental disability or conditions, as required under the ADA and the Rehabilitation Act. It simply does not follow that Defendants discriminated against Plaintiff because of his mental health conditions by denying him medical care for his mental health conditions.

Plaintiff provides no facts indicating that any Defendant participated in or was otherwise responsible for excluding him, *on the basis of his mental health disabilities*,

23

from activities, programs, or other benefits that would otherwise have been available to him because of his mental health disabilities.  Plaintiff's allegations are insufficient to meet his burden to plead facts satisfying the elements of a claim under the ADA and the Rehabilitation Act.  Plaintiff's ADA and Rehabilitation Act claims are DISMISSED with prejudice.

## V. CONCLUSION

IT IS HEREBY ORDERED that:

(1) Based on allegations that he was denied necessary mental health care in violation of federal and state law, Plaintiff states a claim against HPD Defendants Tyler Maalo, Nathan Patopoff, William Daubner, Oscar Willis, and Randall Rivera, and DPS Defendants Dr. Leland and Dr. Yamamoto.  Service is appropriate for these Defendants.

(2) Plaintiff's remaining claims are DISMISSED WITH PREJUDICE for failure to state a claim.  28 U.S.C. § 1915(e)(2).  Specifically, claims against the State of Hawaii, Defendants City and County of Honolulu, Tulia Pula, Wesley Mun, and Jodie Maesaka-Hirata, as well as claims asserted against all Defendants under the Equal Protection Clause, the ADA, and the Rehabilitation Act, are DISMISSED.

(3) **By August 21, 2012**, Plaintiff shall complete the requirements for service of the First Amended Complaint as discussed below.

(4) The Clerk of Court is directed to send Plaintiff six [6] summonses, six [6] USM-285 forms, seven [7] Notice of Lawsuit and Request for Waiver of Service for Summons forms (AO 398), seven [7] Waiver of Service of Summons forms (AO 399), with their instruction sheets, and a copy of the endorsed FAC (if he has not already received one).  Plaintiff shall complete the forms as directed below and submit the following documents to the United States Marshals Service:

(A) **For Defendants who are employees of the Department of Public Safety ("DPS") (Dr. Tom Leland and Dr. Peter Yamamoto)**: One completed USM-285 form, a copy of the endorsed Complaint, and a summons, is sufficient for all DPS Defendants.  Plaintiff should complete separate Notice of Lawsuit and Request for Waiver of Service forms (AO 398), and Waiver of Service of Summons forms (AO 399) for each named DPS Defendant.  Plaintiff shall address these documents to Shelley Nobriga, DPS Offender Management Administrator, 919 Ala Moana Blvd., 4th Floor Honolulu, HI 96814.  Ms. Nobriga is authorized to accept a single complaint, summons, and USM 285 form for all DPS defendants.

(B) **For HPD Defendants (Officers Tyler Maalo, Nathan Patopoff, William Daubner, Oscar Willis, and Randall Rivera):** Each HPD Defendant shall separately receive a

completed USM-285 form, a copy of the endorsed Complaint, a summons, a Notice of Lawsuit and Request for Waiver of Service forms (AO 398), and Waiver of Service of Summons forms (AO 399).

(5) Upon receipt of these documents and a copy of this order, the Marshal shall serve a copy of the endorsed FAC, completed Notice of Lawsuit and Request for Waiver of Service form (AO 398) and completed Waiver of Service of Summons form (AO 399), for each named Defendant, upon Defendant(s), as directed by Plaintiff pursuant to Rule 4 of the Federal Rules of Civil Procedure without payment of costs.

(6) The Marshal is directed to retain the sealed summons and a copy of the First Amended Complaint in the file for future use. The Marshal shall file returned Waiver of Service of Summons forms as well as any requests for waivers that are returned as undeliverable, as soon as they are received.

(7) If a Waiver of Service of Summons form is not returned by a Defendant within sixty days from the date of mailing the request for waiver, the Marshal shall:

(A) Personally serve such Defendant(s) with the above-described documents pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

(B) Within ten days after personal service is effected, the Marshal shall file the return of service for the served

26

Defendant(s), along with evidence of any attempts to secure a waiver of service of summons and of the costs subsequently incurred in effecting service on said Defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and Amended Complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served Defendant in accordance with the provisions of Fed. R. Civ. P. 4(d)(2).

(8) Defendant(s) shall file an answer or other responsive pleading to Plaintiff's First Amended Complaint within sixty [60] days after the date on which the request for waiver of service was sent (if formal service is waived), or twenty [20] days if service is not waived. Failure to do so may result in the entry of default judgment.

(9) Plaintiff shall keep the court informed of any change of address by filing a "NOTICE OF CHANGE OF ADDRESS." The notice shall contain only information about the change of address, and its effective date. The notice shall not include requests for any other relief. Failure to file the notice may result in the dismissal of the action for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure.

(10) Plaintiff shall serve a copy of all further pleadings or documents submitted to the court upon Defendant(s) or their attorney(s).  Plaintiff shall include, with any original paper to be filed with the Clerk of Court, a certificate stating the date that an exact copy of the document was mailed to Defendant(s) or Defendant(s)' counsel.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 31, 2012.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

*Kamakeeaina v. City and County et al.*; 1:11-cv-00770 SOM-RLP; ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE/psas/screening/dmp 2012/kamakeeaina FAC (dsm in part dir svc)